

**SO ORDERED.**

**SIGNED this 31 day of March, 2020.**

**David M. Warren**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

IN RE:                                                     CASE NO. 19-03672-5-DMW

RYAN A. ALBRACHT
                                                           CHAPTER 13
            DEBTOR

## ORDER ALLOWING OBJECTION TO CLAIM

This matter comes on to be heard upon the Objection to Claim ("Objection") filed by Ryan

A. Albracht ("Debtor") on October 28, 2019 and The United States' Response to Debtor's

Objection to Claim filed by the Internal Revenue Service ("IRS") on November 21, 2019.  Based

upon the pleadings, the arguments of counsel during the hearing conducted on the same issue in

*In re Bailey*, Case Number 18-03328-5-DMW,[1] and the case record, the court makes the following

findings of fact and conclusions of law:

---

[1] The parties filed a Joint Motion to Forego Hearing on December 27, 2019, asserting that the issue presented in the Objection is the same as the issue presented in the Objection to Claim filed in the *Bailey* case.  Counsel for both the Debtor and the IRS argued the same legal issue before this court on December 18, 2018 in the *Bailey* case.  The court sustained the Objection to Claim in the *Bailey* case, and the IRS appealed.  Before the United States District Court for the Eastern District of North Carolina issued a ruling in the appeal, the court dismissed the Baileys' bankruptcy case for failure to make plan payments to the Chapter 13 trustee, and on November 21, 2019, the District Court directed that this court vacate its prior Order sustaining the Baileys' Objection to Claim.  The court entered an Order Abating Hearing in this case on January 10, 2020.

1.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), and the court

has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334.  The court has the authority to hear

this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States

District Court for the Eastern District of North Carolina.

2.      The Debtor filed a voluntary petition for relief under Chapter 13 of the United

States Bankruptcy Code on August 12, 2019.

3.      The IRS filed an amended proof of claim ("Claim") on October 25, 2019 asserting

a claim in the amount of $73,269.65.  The Claim includes purported "excise" taxes assessed for

tax years 2016 and 2018 totaling $1,874.89, including interest.  This portion of the Claim is based

on the Debtor's liability for the "shared responsibility payment" ("SRP") imposed by 26 U.S.C. §

5000A(b) for failure to comply with the commonly called "individual mandate" of 26 U.S.C. §

5000A(a) to maintain minimum essential coverage[2] under the Patient Protection and Affordable

Care Act ("ACA")[3] during the relevant tax years.  Section 5000A(b)(1) of the Internal Revenue

Code states as follows:

> If a taxpayer who is an applicable individual, or an applicable individual for whom
> the taxpayer is liable . . . , fails to [maintain minimum essential coverage] for 1 or
> more months, then, except as provided in subsection (e), there is hereby imposed
> on the taxpayer a penalty with respect to such failures in the amount determined
> under subsection (c).

26 U.S.C. § 5000A(b)(1) (2010).[4]

---

[2] As defined by 26 U.S.C. § 5000A(f).

[3] 42 U.S.C. § 18001 *et seq.* (2010).

[4] The SRP has been effectively eliminated through revisions to 26 U.S.C. § 5000A(c), implemented through what is commonly known as the Tax Cuts and Jobs Act of 2017. Pub. L. No. 115-97, 131 Stat. 2054 (2017).  The requirement of 26 U.S.C. § 5000A(a) to maintain minimum essential coverage remains; however, the revisions to 26 U.S.C. § 5000A(c), which governs how the SRP is calculated, result in no SRP being owed for noncompliance with the minimum essential coverage requirement. *See* Pub. L. No. 115-97, § 11081.  It is essentially a law with no effect. The revisions became effective for taxable years beginning after December 31, 2018, after the tax years at issue in this case. *Id.*

4.       The IRS asserts the Claim is entitled to priority treatment in the Debtor's bankruptcy case pursuant to 11 U.S.C. § 507(a)(8), either as an excise tax or as an income tax. Section 507(a)(8) prioritizes the payment of certain unsecured claims of governmental units, including, subject to certain time limitations, claims based on "tax[es] on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition" and "excise tax[es] on . . . transaction[s] occurring before the date of the filing of the petition . . . ." 11 U.S.C. § 507(a)(8)(A) and (E).

5.       The Debtor asserts the SRP does not qualify as a tax, and instead, it should be treated as a penalty giving rise to a general unsecured claim in the Debtor's case.  The Debtor asserts that even if the SRP qualified as a tax, it is not an income tax, and it would not be entitled to priority as an excise tax, because § 507(a)(8)(E) prioritizes excise taxes on *transactions*.  The Debtor argues that no transaction took place when the Debtor failed to maintain minimum essential coverage under the ACA. "The burden is on the party seeking to claim priority status to prove that the claim qualifies for priority status." *In re Util. Craft, Inc.*, No. 06-10816, 2008 Bankr. LEXIS 3564, at *6 (Bankr. M.D.N.C. Dec. 29, 2008).  The court is not persuaded by the arguments by the IRS.  The SRP functions as a penalty, not a tax, but even if the SRP were a tax, it would not qualify as an excise tax entitled to priority under § 507(a)(8)(E).  The Claim is specifically claimed as an "excise" tax, and it is under that classification that the Claim is presented in the case and before the court; therefore, any determination of the SRP being an income tax entitled to priority under § 507(a)(8)(A) is premature and would constitute an advisory opinion. "This court is not authorized and will not issue advisory opinions." *In re Mank*, No. 19-04199-5-SWH, 2020 Bankr. LEXIS 657, at *6 (Bankr. E.D.N.C. Mar. 10, 2020) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937) (distinguishing a real and substantial controversy from an advisory opinion)).  "The

court cannot make a blanket ruling on issues of law that have no connection to the facts of the case before it." *Id.* at \*6-7 (citing *In re Maupin*, 384 B.R. 421, 429 (Bankr. W.D. Va. 2007) (finding that a blanket plan provision asked the court to rule on an issue of law "without so much as a framed dispute, a motion, a notice, briefs, a hearing, or a discussion of the facts")).

<u>The Shared Responsibility Payment Functions as a Penalty, Not a Tax</u>

6.      In *National Federation of Independent Business v. Sebelius*, the United States Supreme Court ruled on a challenge to the constitutionality of the SRP and found that the SRP "may for constitutional purposes be considered a tax." 567 U.S. 519, 566 (2012) (*NFIB*).  In that case, the Court was bound by the requirement that "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Hooper v. Cal.*, 155 U.S. 648, 657 (1895) (cited by C.J. Roberts in his opinion, 567 U.S. at 563).  It is the opinion of this court that the SRP functions as a regulatory penalty against individuals who fail to abide by the individual mandate insurance requirement.  The enactment of the SRP requirement of 26 U.S.C. § 5000A(b)(1) clearly was meant to deter individuals from forgoing health insurance.  In its prior opinion entered in the *Bailey* case, this court thoroughly explained the reasons the SRP bears the hallmarks of a penalty, not a tax. *See In re Bailey*, No. 18-03328-5-DMW, 2019 Bankr. LEXIS 1601 (Bankr. E.D.N.C. May 24, 2019), *vacated*, *United States v. Bailey*, No. 5:19-cv-226, 2019 U.S. Dist. LEXIS 224472 (E.D.N.C. Nov. 22, 2019).  For example, the court noted that "the SRP is only owed if an individual <u>disobeys</u> the mandate to maintain coverage under the ACA. . . . [F]undraising legislation which issues a mandate and, in turn, relies on disobedience fails practical logic." 2019 Bankr. LEXIS 1601, at \*11.  For purposes of this opinion, though, the court will assume that the SRP functions as a tax.

4

<u>Even if the Shared Responsibility Payment is a Tax,</u>
<u>It Does Not Qualify as an Excise Tax on a Transaction</u>

7.      As noted *supra*, 11 U.S.C. § 507(a)(8)(E) prioritizes the payment of

> an excise tax on a transaction occurring before the date of the filing of the petition
> for which a return, if required, is last due, under applicable law or under any
> extension, after three years before the date of the filing of the petition;  or . . . if a
> return is not required, a transaction occurring during the three years immediately
> preceding the date of the filing of the petition.

11 U.S.C. § 507(a)(8)(E).  Assuming the SRP qualifies as a tax, then in order for § 507(a)(8)(E) to

apply to the SRP, this court would have to find the SRP is an excise tax on some sort of transaction.

The Fifth Circuit Court of Appeals just recently addressed this issue and found that the SRP cannot

qualify as an excise tax on a transaction. *See United States v. Chesteen (In re Chesteen)*, No. 19-

30195, 2020 U.S. App. LEXIS 5335 (5th Cir. Feb. 20, 2020).  This court agrees with the *Chesteen*

court's conclusion.

8.      *Black's Law Dictionary* defines an "excise" as "[a] tax imposed on the manufacture,

sale, or use of goods (such as a cigarette tax), or on an occupation or activity (such as a license tax

or an attorney occupation fee)." *Excise*, Black's Law Dictionary (10th ed. 2014).  With that

definition in mind, the court cannot see how the SRP, assessed on individuals who choose to do

nothing in the face of 26 U.S.C. § 5000A(a), could possibly qualify as an excise.

9.      The individual mandate requirement provides that "[a]n applicable individual shall

for each month beginning after 2013 ensure that the individual, and any dependent of the individual

who is an applicable individual, is covered under minimum essential coverage for such month."

26 U.S.C. § 5000A(a).  "The individual mandate . . . does not regulate existing commercial activity.

It instead compels individuals to *become* active in commerce by purchasing [health insurance] . .

. ." *Chesteen*, 2020 U.S. App LEXIS 5335, at *9-10 (quoting *NFIB*, 567 U.S. 519, 552 (opinion of

Roberts, C.J.)).  "If the individual mandate is targeted at a class, it is a class whose commercial

inactivity rather than activity is its defining feature." *NFIB*, 567 U.S. at 556 (opinion of Roberts, C.J.). "This is the opposite of the activity required for a tax to constitute an 'excise tax' pursuant to § 507(a)(8)(E)(i)." *Chesteen*, 2020 U.S. App LEXIS 5335, at \*10.

10.     The IRS cites certain case law which finds an excise may include a tax imposed "upon the exercise of a 'right or privilege.'" *Rizzo v. Mich. Dep't of Treasury (In re Rizzo)*, 741 F.3d 703, 706 (6th Cir. 2014) (quoting *In re Nat'l Steel Corp.*, 321 B.R. 901, 909 (Bankr. N.D. Ill. 2005)). The court in *National Steel Corp.* based its ruling, at least in part, on a prior edition of *Black's Law Dictionary* which included in the definition of an "excise tax" a tax on "the enjoyment of a privilege." 321 B.R. at 908 (quoting *Excise Tax*, Black's Law Dictionary (6th ed. 1990)). A privilege in that sense, though, is the right or privilege to engage in some sort of activity, not the right or privilege to ignore a statutory mandate. *See Nat'l Steel Corp.*, 321 B.R. at 909 ("Indeed, the Supreme Court observed nearly seventy years ago that 'an excise . . . extends to vocations or activities pursued as of common right.'") (quoting *Steward Machine Co. v. Davis*, 301 U.S. 548, 580-81 (1937)).

11.     The IRS nevertheless asserts that § 507(a)(8) is meant to encompass all taxes, and the itemization of various types of taxes is meant solely to impose timing restrictions on the priority payment of certain taxes, not to exclude any unspecified type of tax from its purview. It seems the IRS would ask the court to "pick the closest match" within § 507(a)(8) in order to award priority status to the SRP. The IRS cites a Seventh Circuit Court of Appeals case, *In re Groetken*, 843 F.2d 1007 (7th Cir. 1988). The *Groetken* court examined the legislative history of § 507(a)(8)(E) (which was § 507(a)(7)(E) at the time), and noted that "the floor leaders, Senator DeConcini and Representative Edwards, stated that: '*all* Federal, State or local taxes generally considered or expressly treated as excises are covered by this category, including sales taxes, estate and gift

6

taxes, gasoline and special fuel taxes, and wagering and truck taxes.'" 843 F.2d at 1014 (quoting

124 Cong. Rec. 34,016 (Senate), *reprinted in* 1978 U.S. Code Cong. & Admin. News 6505, 6567;

124 Cong. Rec. 32,416 (House), *reprinted in* 1978 U.S. Code Cong. & Admin. News 6436, 6498).

Despite this insight into the legislative history of what is now § 507(a)(8)(E), the court cannot

ignore the plain language of § 507(a)(8)(E) referencing excise taxes *on transactions*.

12.     The Fifth Circuit in *Chesteen* noted that even if the taxpayer's decision was an

active action not to purchase the insurance, the failure to make that purchase, again, is a result of

inactivity. *Chesteen*, 2020 U.S. App LEXIS 5335, at \*10.

13.     The IRS argues the reference to excise taxes on transactions should not disqualify

excise taxes imposed on "inaction" from priority status.  The IRS cites *Williams v. Motley*, 925

F.2d 741 (4th Cir. 1991) and *DeRoche v. Arizona Industrial Commission (In re DeRoche)*, 287

F.3d 751 (9th Cir. 2002) as cases involving exactions on inaction, but the IRS is misguided.

14.     In *Williams* the Virginia Department of Motor Vehicles ("DMV") suspended the

debtor's vehicle registration and driving privileges because she did not furnish evidence of liability

insurance in connection with the operation of her vehicle. 925 F.2d at 742. The DMV would not

restore these privileges until the debtor paid an uninsured motor vehicle assessment imposed upon

individuals who seek to register an uninsured vehicle or who fail to demonstrate that a registered

vehicle is covered by liability insurance. *Id.*  The court held that an uninsured motor vehicle

assessment was "an involuntary exaction[,] rather than a payment to receive permission to engage

in a voluntary activity," making it an excise tax not dischargeable in bankruptcy. *Id.* at 744.

15.     *Chesteen* noted that the excise tax in *Williams* resulted from activity, not inactivity.

Although the tax was assessed because the debtor failed to act to maintain insurance coverage, the

assessment was only triggered when the debtor in *Williams* sought to continue operating a

registered vehicle without furnishing evidence of liability insurance.  ["T]he activity was . . . registering the vehicle." *Chesteen*, 2020 U.S. App. LEXIS 5335, at *11.

16.     In *DeRoche*, an employer failed to carry workers' compensation insurance, and when an employee became injured, the employee received compensation from a "Special Fund" maintained by the Industrial Commission of Arizona rather than through any insurance policy. 287 F.3d at 753.   Arizona law required the employer to reimburse the Special Fund for the compensation it paid to the employee, and the court cited a prior case classifying that sort of reimbursement as an excise tax. *Id.*  In determining the date of the "transaction" for purposes of § 507(a)(8)(E), the *DeRoche* court held that "the act of employing a worker without carrying the required insurance when the worker is injured" was a transaction. *Id.*  "[T]he relevant activity [or action] was the employer's employing the worker." *Chesteen*, 2020 U.S. App. LEXIS 5335, at *11.

17.     An additional example cited by *Chesteen* was the *Groetken* case discussed *supra*. *Chesteen* noted that in *Groetken*, the excise tax resulting from either a sales tax or a tax on the occupation of retailing clearly required activity of being in business. *Chesteen*, 2020 U.S. App. LEXIS 5335, at *11 (citing *In re Groetken*, 843 F.2d 1007, 1014 (7th Cir. 1988)).

18.     The conclusion reached by *Chesteen* is that for the SRP to follow the cases in *Williams*, *DeRoche* and *Groetken*, "the SRP would have to be imposed only upon a person's activity of, *e.g.*, utilizing health-care services while lacking qualifying health insurance. But, as stated, the SRP applies even when a person engages in no activity." *Id.* (citation omitted).

19.     "'[T]ransaction' suggests *action*—such as the manufacture or consumption of a commodity, which, when viewed in strict isolation at least, may be a solitary act—not *in*action, deliberate or otherwise." *In re Huenerberg*, 590 B.R. 862, 871 (Bankr. E.D. Wis. 2018).

20.     The SRP cannot be an excise tax because it lacks the activity of the Debtor for the tax to be imposed and does not fit into the long-standing definitions of excise tax.

### The Shared Responsibility Payment as an Income Tax

21.     The IRS argues in the alternative that the SRP is an income tax and entitled to priority. The Claim is filed as excise taxes and not as income taxes; therefore, the facts of the case do not present themselves as a claim for income taxes for 2016 and 2018.  While that issue was not preserved on appeal in *Chesteen*, the issue is not ripe before this court; now therefore,

It is ORDERED, ADJUDGED and DECREED as follows:

1.     The Objection be, and hereby is, sustained;

2.     The portion of the Claim relating to the SRP in the amount of $1,874.89 shall be removed from the portion of the Claim entitled to priority and added to the general unsecured portion of the Claim; and

3.     The IRS shall have an unsecured priority claim in the amount of $35,151.73 and a general unsecured claim in the amount of $38,117.92.

### END OF DOCUMENT